

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 25, 1947

Hon. W. O. Reed                    Opinion No. V-268
Speaker of the House
Capitol Building                   Re: Present status of seven
Austin, Texas                          Appropriation Bills cer-
                                       tified as exceeding antici-
                                       pated revenues.

Dear Mr. Speaker:

Hon. George H. Sheppard, State Comptroller, has for-
warded to us your letter of June 16, 1947, addressed to him and
requesting that he seek an opinion as to the status of certain Ap-
propriation Bills and your duties with reference to filing same.
You directed the request through the Comptroller under the im-
pression that you were not entitled to an opinion under Article
4399. Since the opinion request directly concerns the duties of
your office and matters within your jurisdiction, it is our opin-
ion that you are entitled to this opinion as the head of one of the
branches of the Legislative Department of our government. There-
fore, reply is made direct to you with a copy to the Comptroller.

Your inquiry calls for our ruling as to "the status" of
House Bills 11, 61, 210, 237, 321, 384, and 455 which were returned
to you "at various times on June 6, 1947, duly certified by Mr. R.S.
Calvert, Acting Comptroller of Public Accounts, that amounts ap-
propriated in each of the bills would exceed available funds of the
General Revenue." Also you ask what course you should follow "in
officially filing them under Section 49a of Article III of the Consti-
tution."

The pertinent portion of Section 49a of Article III of the
Texas Constitution provides as follows:

"From and after January 1, 1945, save in the case
of emergency and imperative public necessity and with
a four-fifths vote of the total membership of each House,
no appropriation in excess of the cash and anticipated
revenue of the funds from which such appropriation is
to be made shall be valid. From and after January 1,
1945, no bill containing an appropriation shall be con-
sidered as passed or be sent to the Governor for con-
sideration until and unless the Comptroller of Public

Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds. When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation." (Emphasis supplied)

The plain intent of this Constitutional Amendment was to prevent the Legislature from passing appropriation bills in excess of the anticipated amount of revenue that would be available to pay such expenditures, except in cases of emergency and imperative public necessity with a four-fifths vote of the total membership of each House. It is called the "pay as you go" or "anti-deficit financing" Amendment, and was designed to keep the State on a cash basis with a balanced budget.

All of the seven Bills now under consideration contain appropriations, with a combined total in excess of $4,800,000. All passed the House prior to May 19. They passed in the Senate in the closing days, June 4 and 5, after the Comptroller's latest estimate reflected that funds would not be available.

Each of the bills failed to receive the vote of four-fifths of the total membership of the House of Representatives on final passage or on final concurrence in Senate amendments. Only one of the bills, H.B. 321 (Junior College Bill), received a four-fifths vote of the total membership of the Senate. No record vote was taken in the Senate on the remaining Bills except H.B. 455 (soil conservation), which did not receive the required four-fifths. None of the Bills received a four-fifths vote of the membership of both Houses. Each bears the Comptroller's certificate that it "exceeds the amount estimated to be available."

Therefore, to determine the present status of these Bills, we need look only to the plain and unambiguous words contained in the second sentence, second paragraph, of Section 49a, Article III, of the Texas Constitution, which states that under such circumstances "no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds." These Bills do not have

the certificates which are required before they shall be consid-ered as passed. On the contrary, they have certificates that each of the appropriations exceeds the estimated available funds. Under the above constitutional provision, such a certificate amounts to a practical "veto" of a Bill. Upon making such a certificate, the Comptroller is required to return a Bill to the House in which it originated and to inform both Houses. Thereupon, the Constitution provides that "the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenues or reducing the appropriation." As held in our Opinion Number V-208, the Legislature has another alternative -- the passage of the Bill with an emergency provision by a four-fifths vote of the total membership of each House after it is returned with the adverse certificate from the Comptroller. This amounts to an "override" of the practical "constitutional veto" required of the Comptroller. None of these actions were taken by either the House or Senate. In fact, according to your letter, the late final passage of these Bills caused their return from the Comptroller to be too late for further action.

Accordingly, in their present status with "no funds" certificates from the Comptroller, these Bills are dead. In the words of the Constitution, they are not "considered as passed."

All of these Bills include very meritorious projects which would be highly desirable for the State at large and the particular communities affected thereby. This office has received numerous requests from interested citizens that we find a legal way to hold these Bills valid and subject to consideration by the Governor. In accordance with a fundamental rule of statutory construction, we have examined and studied these Bills and the constitutional provisions with the purpose of resolving any and all doubt in favor of the validity of the Bills. However, in view of the Comptroller's certificate now affixed to each of the Bills, the plain and simple words quoted above from the Constitution leave no doubt to be resolved in favor of their validity.

It has been suggested that the Comptroller may have the legal authority to revise his estimate and recall his certificate before the twenty days expire for consideration of Bills by the Governor after adjournment of the Legislature. Others have suggested that you may have the legal authority to return the Bills to the Comptroller for a new certificate in case he finds additional revenue available before the expired twenty days after adjournment of the Legislature. These suggestions are followed by the argument that the Bills could be "considered as passed" if the Comptroller finds additional money and makes new certificates to such effect. Others contend that when the Comptroller once returns the Bills

to the Legislature with a certificate of "no funds available" and the Legislature takes no further action thereon before adjournment, that the Bills cannot be returned to the Comptroller for subsequent action. It is unnecessary for us to pass upon the hypothetical questions involved in these suggestions and arguments. It is our policy to pass upon such questions only when and as they arise. A decision upon such questions before they arise would be based upon too many "ifs," conditions, and speculations to be worth anything on a future fact situation which may or may not arise. This policy is especially proper with reference to the constitutional provision under consideration because it may well be that the next Legislature will want to make its own interpretation and pass statutory procedure for future guidance.

Upon the fact situation now before us, we believe that our answer on the present status of the Bills is sufficient for the purposes stated in your letter. If this present status of the Bills is the same at the expiration of twenty days after adjournment of the Regular Session of the Fiftieth Legislature, it is our opinion that you will be justified in considering the Bills the same as if they had not passed. At that time you will be safe in filing them in the same manner as other Bills which failed of final passage in time to be presented to the Governor for his approval.

## SUMMARY

Section 49a, Article III of the Texas Constitution provides that "no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds," except in case of emergency and imperative public necessity with four-fifths vote of the total membership of each House. So long as the seven House Bills which were returned by the Comptroller on the final day of the Fiftieth Legislature, Regular Session, contained certificates that their appropriations were in excess of estimated revenue, they shall not be "considered as passed" (none having received the necessary four-fifths vote of each House). If such present status is the same at the termination of the twenty day period for consideration by the Governor after adjournment, the Bills should be filed the same as

other Bills which failed of final passage in time for approval by the Governor.

Sincerely,

Price Daniel
Attorney General

PD:mj:sl